# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| KIMBERLY CORRAL, </br>c/o Friedman Nemecek Long & Grant, L.L.C. </br>1360 E. 9th Street, Suite 650 </br>Cleveland, Ohio 44114 </br></br>    Plaintiff, </br></br> vs. </br></br></br>CUYAHOGA COUNTY </br>2079 E. 9th Street </br>Cleveland, Ohio 44115 </br></br>and </br></br>CUYAHOGA COUNTY PROSECUTOR'S OFFICE, </br>1200 Ontario Street. 9th Floor </br>Cleveland, Ohio 44113 </br></br>and </br></br>ROBERT DeSIMONE, Individually and </br>in his official capacity as an investigator of </br>the Cuyahoga County Prosecutor's Office </br>1200 Ontario Street. 9th Floor </br>Cleveland, Ohio 44113 </br></br>    Defendants. | Case No: </br></br>JUDGE: </br></br>**VERIFIED COMPLAINT FOR** </br>**INJUNCTIVE AND OTHER RELIEF** </br></br>**(JURY DEMANDED)** |

  Now comes Plaintiff, Kimberly Corral[1], and for her Verified Complaint against Defendants

alleges as follows:

---

[1] Plaintiff brings the instant action in order to enforce the rights of an indeterminate number of her clients and prospective clients. It is well settled that attorneys have standing to bring such actions on behalf of their clients, as well as an ethical duty to do so. *See In re Search Warrant Issued June 13, 2019*, 942 F.3d 159 (4th Cir. 2019), citing *See Upjohn Co. v. United States*, 449

**PARTIES**

1.	Kimberly Corral ("Plaintiff") is an attorney licensed in the State of Ohio. Plaintiff's law practice is situated in Cuyahoga County, Ohio, and was situated therein at all relevant times.

2.	Cuyahoga County ("Defendant Cuyahoga County") is a unit of local government located in the State of Ohio and organized under the laws thereof.

3.	The Cuyahoga County Prosecutor's Office ("Defendant Prosecutor's Office") is a county government office located in and serving Cuyahoga County, Ohio.

4.	Robert DeSimone ("Defendant DeSimone") was, at all times relevant to this action, an employee of the Cuyahoga County Prosecutor's Office, serving as an investigator. Defendant DeSimone is sued in his individual and official capacity. Defendant DeSimone is a person under 42 U.S.C. §1983 and at all times relevant to this action acted under color of state law.

**JURISDICTION AND VENUE**

5.	This Court has jurisdiction pursuant to 28 U.S.C §1331, 28 U.S.C. §1343, 42 U.S.C. §§1983 and 1988, and the Fifth and Sixth Amendments to the Constitution of the United States of America.

6.	Venue is appropriate under 28 U.S.C. §1391(b).

**NATURE OF THE ACTION**

7.	This action arises from the issuance of a subpoena *duces tecum* (hereinafter "subject subpoena") served upon ViaPath Technologies, formerly known as Global Tel*Link (hereinafter "GTL/ViaPath,") which ostensibly seeks to obtain records of confidential communications

---

U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), *Republic Gear Co. v. Borg-Warner Corp.*, 381 F.2d 551, 556 (2d Cir. 1967), and *In re Grand Jury Proceedings*, 727 F.2d 1352, 1354-55 (4th Cir. 1984).

between Plaintiff and her clients/prospective clients subject to attorney-client privilege. The issuance of the subject subpoena, potential enforcement of the same, and receipt and review of its sought-after materials constitute a violation of the rights of Plaintiff's clients afforded to them by the Fifth and Sixth Amendments to the Constitution of the United States of America.

8. Plaintiff seeks, on behalf of her clients, injunctive relief from the enforcement of the subject subpoena and/or the issuance of any further subpoenas which may seek the production of privileged materials, as well as other relief under federal law.

9. Plaintiff has standing to bring this suit pursuant to *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981), and its progeny.

**FACTUAL BACKGROUND**

10. In 2003, Ru-el Sailor ("Sailor") was prosecuted and convicted for the murder of Omar Clark ("Omar") in the Cuyahoga County Court of Common Pleas along with two (2) co-defendants.

11. The evidence in that case established that Omar was shot and killed outside of a residence in the City of Cleveland on the evening of November 16, 2002, following a verbal altercation between Omar and another individual named Cordell Hubbard ("Hubbard").

12. As a result of his conviction, Sailor was sentenced to a term of 28 years to life in prison.

13. Sailor claimed that following his conviction, Hubbard confessed that he was responsible for the shooting and confirmed that Sailor was not involved or present at the scene of the crime. In response, Sailor filed a Motion for New Trial and attached a signed Affidavit from Hubbard detailing Sailor's innocence.

14. Sailor's motion was denied by the trial court following a hearing.

15. In or around 2014, Sailor retained Plaintiff's law firm to represent him in post-conviction proceedings, prompting Plaintiff to file a Memorandum in Support of Jurisdiction with the Ohio Supreme Court.

16. After the Ohio Supreme Court declined to accept jurisdiction, Plaintiff and her firm continued their efforts to overturn Sailor's conviction.

17. In and around 2016, the Ohio Innocence Project ("OIP") became involved in the case as co-counsel with Plaintiff and her firm.

18. In or around January 2017, the OIP and Plaintiff filed an application to the Cuyahoga County Conviction Integrity Unit ("CIU"), prompting the CIU to review Sailor's case and conduct numerous witness interviews.

19. One individual interviewed, William Sizemore ("Sizemore") admitted to being present when Omar was killed and confirmed that Sailor was not present and or otherwise involved in the murder.

20. On March 28, 2018, Sailor and the State of Ohio filed a joint Motion to Vacate his conviction based upon new evidence demonstrating Sailor's innocence of the allegations set forth in the Indictment.

21. After his original convictions were vacated, Sailor entered pleas of guilty to two (2) amended Counts, to wit: perjury in violation of R.C. § 2921.11(A) and obstructing justice in violation of R.C. § 2921.32(A).

22. By all accounts, the amended charges were predicated on Sailor's false testimony at trial wherein he claimed to have been with Hubbard the entire night that Omar was shot.

23. Thereafter, Sailor, represented by new counsel, filed a claim against the State of Ohio in the Cuyahoga County Court of Common Pleas for wrongful imprisonment.

24. The court ultimately found Sailor to have been wrongfully incarcerated and awarded him $652,000.00 in compensation

25. On or about March 27, 2020, Sailor, represented by the law firm of Friedman & Gilbert, filed a Complaint in the United States District Court for the Northern District of Ohio against the City of Cleveland and other named defendants, alleging, *inter alia*, various violations of his civil rights under 42 U.S.C. § 1983, which remains pending (hereinafter, "the federal action").

26. During the course of conducting civil discovery, defendants obtained recorded phone calls between Sailor and third parties that were made while Sailor was still incarcerated wherein Sailor allegedly admits that he was aware that Hubbard was responsible for the shooting well in advance of trial.

27. After obtaining said recordings, the defendants filed a Motion to Dismiss the federal action with prejudice.

28. On July 17, 2024, Sailor's counsel in the federal action filed a Motion to withdraw from further representing Sailor.

29. While the Motion to Dismiss and Motion to Withdraw were pending, the defendants in the federal action issued a subpoena *duces tecum* (hereinafter, "federal subpoena") to GTL/ViaPath seeking "Call recordings for all calls placed by any inmate of the Ohio Department of Rehabilitation and Correction" ("ODRC") to four (4) different phone numbers from January 1, 2012, to the present." (*See Plaintiff's Exhibit A, attached hereto*).

30. All but one (1) of the phone numbers listed on the federal subpoena belonged to Plaintiff and/or her law firm.

31. GTL/ViaPath is a telecommunications company that provides inmate calling services to various correctional facilities, including but not limited to those under the purview of ODRC.

32. In the ordinary course of its business practices, GTL/ViaPath electronically stores recordings of calls made by and to inmates utilizing their systems.

33. The recordings sought by the federal subpoena depict, necessarily and in substantial part, confidential communications between Plaintiff and her clients or prospective clients.

34. The recordings sought by the federal subpoena are, to the extent that they depict such confidential conversations, subject to attorney-client privilege.

35. Upon discovering the issuance of the federal subpoena, Plaintiff retained the undersigned and sought leave to intervene in the federal action.

36. On or about August 22, 2024, Plaintiff withdrew her Motion to Intervene after the defendants in the federal action agreed not to enforce the federal subpoena.

37. The defendants in the federal action further agreed to inform the undersigned should any subsequent subpoenas be issued related to Plaintiff or her law firm.

38. On or about August 26, 2024, the undersigned requested that GTL/ViaPath inform their office should they receive any subsequent subpoena seeking the same information relating to Plaintiff or her law firm as was sought in the federal action.

39. On or about August 29, 2024, the undersigned was informed by a representative of GTL/ViaPath that the company had been served with the subject subpoena which sought a portion of the same information sought in the federal subpoena. (*Plaintiff's Exhibit B, attached hereto*).

40. Upon information and belief, the subject subpoena was issued by Defendant DeSimone, an investigator employed by Defendant Prosecutor's Office and Defendant Cuyahoga County, who was acting in his official capacity at all relevant times.

41. Neither Plaintiff nor undersigned possess or have reviewed the contents of the subject subpoena.

42. After learning of the issuance of the subject subpoena, the undersigned made multiple attempts to discuss the same with Defendant DeSimone or another agent of Defendant Prosecutor's Office.

43. To date, Defendant DeSimone has been unresponsive.

44. To date, Defendant Prosecutor's Office has been unwilling to confirm or deny the existence of the subject subpoena.

45. Upon information and belief, Defendants have not instituted or suggested the utilization of a taint or filter team, or any other means of oversight, in order to identify issues of privilege which may be implicated by the sought-after recordings.

46. To the best of Plaintiff's knowledge, no client whose communications may be encompassed by the subject subpoena has waived attorney-client privilege, and the privilege otherwise remains intact.

## COUNT I
**Violation of the Fifth and Sixth Amendments to the United States Constitution
Pursuant to 42 U.S.C. §§ 1983 and 1988
(Against Defendant DeSimone in his individual and official capacity)**

47. Plaintiff re-alleges and incorporates paragraphs 1 through 46 above as if fully set forth herein.

48. The Fifth Amendment to the United States Constitution provides, in relevant part, that "no person…shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law."

49. The Sixth Amendment to the United States Constitution provides, in relevant part, that "in all criminal prosecutions, the accused shall…have the Assistance of Counsel for his defense."

50. By issuing the subject subpoena to obtain materials protected by attorney-client privilege, Defendant DeSimone violated the rights of Plaintiff's clients under the Fifth and Sixth Amendments to the United States Constitution as described herein.

51. Defendant DeSimone knew the issuance and anticipated enforcement of the subject subpoena violated the rights of Plaintiff's clients under the Fifth and Sixth Amendments to the United States Constitution.

52. Defendant DeSimone was acting under the color of the law when he showed intentional, outrageous, willful, and reckless disregard for Plaintiff's constitutional rights.

53. As a direct and proximate result of these constitutional violations, Plaintiff's clients have been harmed, and stand to suffer further, irreparable harm including but not limited to the disclosure of conversations they shared with Plaintiff under the belief that the same were protected by attorney-client privilege.

54. As discussed *supra*, Plaintiff has standing to bring an action on behalf of her clients in order to protect these rights and preserve attorney-client privilege.

55. Plaintiff, on behalf of her clients, is entitled to injunctive relief as a result of these constitutional violations.

## COUNT II
### Injunctive Relief
### (Against All Defendants for violations of Fifth and Sixth Amendments to the United States Constitution)

56. Plaintiff re-alleges and incorporates paragraphs 1 through 55 above as if fully set forth herein.

57. A case in controversy exists because Defendants have issued the subject subpoena seeking the production of recorded conversations, to which Plaintiff was a party, that are subject to the protections of attorney-client privilege.

58. Judicial intervention is required because unless Defendants are enjoined from enforcing the subject subpoena or issuing future subpoenas seeking privileged materials, Plaintiff and her clients will be irreparably harmed.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Honorable Court enter an order declaring that Defendants' subpoena *duces tecum* impermissibly seeks the production of materials protected by attorney-client privilege, and further requests the following relief:

A. A preliminary and permanent injunction prohibiting Defendants, or any other agents thereof, from enforcing the subject subpoena and issuing any further subpoenas which request the production of material related to Plaintiff subject to attorney-client privilege;

B. An order mandating that Defendants turn over a copy of the subject subpoena to Plaintiff[2];

C. All related court costs, administrative costs and attorney fees incurred in the filing, advocacy and disposition of this claim; and

D. All such other relief that this Honorable Court deems fair and just.

---

[2] Given Defendant's potential interests in the confidentiality of the subject subpoena, Plaintiff is amenable to a protective order on its contents or any other limit on dissemination that the Court deems proper.

Respectfully Submitted,

/s/ *Eric C. Nemecek*
ERIC C. NEMECEK (0083195)
IAN N. FRIEDMAN (0068630)
ERIC F. LONG (0093197)
MADELYN J. GRANT (0098165)
TYLER J. WALCHANOWICZ (0100115)
Counsel for Kimberly Corral
Friedman Nemecek Long & Grant, L.L.C.
1360 East 9th Street, Suite 650
Cleveland, Ohio 44114
P: (216) 928-7700
F: (216) 820-4659

E: ecn@fanlegal.com